IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV471-MU-02

| | | |
|---|---|---|
| BILLY REVARN HOWIE, | ) | |
|     Petitioner, | ) | |
| | ) | |
|       v. | ) | <u>ORDER</u> |
| | ) | |
| JOHN CROW, Superintendent) | | |
|   Of Lincoln Correctional) | | |
|   Center, | ) | |
|      Respondent. | ) | |

**THIS MATTER** comes before the Court on petitioner's Petition for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254, filed September 9, 2004; on the respondent's combined "Motion for Summary Judgment And Answer . . . ," filed September 27, 2004; and on the petitioner's document captioned as a "Response [A]nd Motion [T]o Dismiss Respondent's Request [F]or Summary Judgment.  For the reasons stated herein, the petitioner's Motion to Dismiss the respondent's Motion for Summary Judgment will be <u>dismissed</u> as moot.

However, notwithstanding the highly deferential standard of review to which the State Court's adjudication is entitled, this Court finds that the State Court's determination that trial counsel was not ineffective both involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court and/or that determination is the result of an unreasonable determination of the facts in light of

the evidence presented in the State Court proceedings.  See
Williams v. Taylor, 529 U.S. 362, 413 (2000); and Burch v.
Corcoran, 273 F.3d 577, 583 (4th Cir. 2001).  In either case,
this Court has concluded that the petitioner's Petition for a
Writ of Habeas Corpus must be granted; and that the respondent's
Motion for Summary Judgment must be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Petition, the record establishes that on
October 16, 2000, the petitioner was indicted on a charge of Fe-
lonious Possession of Cocaine; and on January 8, 2001, he was
indicted on a charge of being an Habitual Felon.  After entering
pleas of "not guilty," the Superior Court of Union County conduc-
ted separate jury trials of those matters.

During its case in chief for the drug charge, the prosecu-
tion presented the testimony of four witnesses, including the two
officers who seized the cocaine from the petitioner's motel room
and then arrested him.  The State's evidence tended to establish
that on June 18, 2000, Monroe Police Department Officers Pierce
and McCallister responded to a call at the Economy Inn on U.S.
Highway 74 (trial "Transcript" at p. 12, hereafter referred to as
"Tr.").

Upon their arrival, the Officers encountered a woman named
Julie Drake, along with her mother in the parking lot of the
Economy Inn (Tr. at 14).  The two women were having a dispute

concerning Ms. Drake's unauthorized use of her mother's vehicle
(Tr. at 14 and 39).  However, at some point Ms. Drake's mother
reportedly told the Officers that she also "was very upset with
[Drake's] behavior, hanging out at the Economy Inn with people
that [the mother] believed that smoked cocaine" (Tr. at 32).
Officer McCallister did not know Ms. Drake before this incident;
however, Officer Pierce recognized Drake from having met her once
before at the Economy Inn "in [his] capacity as an Officer" (Tr.
at 65-66).

In any event, the Officers engaged the two women in a "very
short" conversation concerning their dispute, after which Ms.
Drake's mother left the parking lot in her vehicle (Tr. at 39).
However, the Officers continued speaking with Ms. Drake, who at
some point told them that she wanted to continue their conversa-
tion upstairs in a motel room (Tr. at 18 and 39).  Although there
was no specific mention of a room key, both Officers testified
that Ms. Drake led them into a motel room, at which point they
encountered the petitioner (Tr. at 18 and 40).

With respect to that encounter, Officer Pierce tended to va-
cillate, but ultimately testified that he could not recall if the
petitioner had invited them into the room (Tr. at 18-19).  On the
other hand, Officer McCallister testified that the petitioner
actually had invited him and Pierce into the room, telling them
that he did not want them to discuss the dispute concerning Drake

and her mother out in the parking lot (Tr. at 40-41).

Nevertheless, just as Officer Pierce began to testify concerning the events which took place once he and McCallister entered the room, defense counsel lodged objections to that testimony, and then moved to strike the same. (Tr. at 15). Defense counsel's objections were overruled, and his motions to strike were denied (Tr. at 15-16). Consequently, defense counsel asked the trial Court "for a voir dire on th[at] matter," and the Court granted the request (Tr. at 16).

On voir dire, defense counsel questioned Officer Pierce exclusively about the Officers' entry into the room, and counsel made absolutely no inquiry into the items which were seized or the circumstances surrounding such seizures. In response to defense counsel's questions, Officer Pierce testified that he "believe[d] Ms. Drake [was] the one that originally wanted to go . . . to the room and talk about the situation between her and her mother"; that the situation involved "some domestic dispute with [Drake] and her mother I believe over a vehicle, and not being at home"; that the petitioner was in the room when they arrived; that Ms. Drake opened the door for the officers; and that he "[could] not say" whether the petitioner had invited the Officers into the room (Tr. at 16-19).

At the conclusion of that testimony, defense counsel argued that there was no indication that Ms. Drake had any right to

4

enter the room, and no indication that the petitioner had invited the Officers into the room (Tr. at 20). Therefore, according to defense counsel, the Officers' entry was unauthorized, and so counsel argued that "[a]ny testimony that happened after they entered the room should be suppressed at this point" (emphasis added) (Tr. at 20).

In response, the prosecutor curiously argued that the defense attorney "doesn't represent Ms. Drake. He doesn't have standing to contest Ms. Drake letting him in that room. [The Officers] had every right to be in the room upon her invitation" (Tr. at 21). Notwithstanding that non-response, the trial Court overruled defense counsel's objections, and the direct examination of Officer Pierce resumed (Tr. at 21).

Thereafter, the State offered more evidence which showed that once the three went inside the petitioner's motel room, Ms. Drake and the petitioner sat down on a bed which was located near the door, that is, in the front part of the room; and that the Officers momentarily continued their discussion with Drake (Tr. at 23 and 41). However, Officer Pierce testified that although he could see into the bathroom from the bed area where the conversation was taking place, he chose to go back into the bathroom "just to make sure there wasn't someone else around, for officer's safety" (Tr. at 23). According to Pierce, he conducted "a quick cursory search of the room for any weapons that may be

laying around"; and it was during his search of the sink which was located in the back portion of the room, just outside of the bathroom, that he observed that a plastic, disc-like top from one of the handles on the faucet had been removed, and "some plastic bags [had been] stuffed down in that hole" (Tr. at 23).

After observing the handle, Officer Pierce called over Officer McCallister to take a look at his discovery (Tr. at 23 and 42). Pierce testified that it then "became apparent to [them] that it was some form of illegal narcotics" (Tr. at 24). Officer McCallister then "seized" the bag, and the Officers observed that it held two smaller bags--one containing a white powdery substance, and the other containing granular, small rock-like substances (Tr. 43).

Following their discovery and seizure of the presumed contraband, the Officers advised the petitioner of his Miranda rights and took a statement from him (Tr. at 26). In his statement, the petitioner claimed ownership of the drugs (Tr. at 27). The Officers then arrested the petitioner, and conducted a full search of his motel room (Tr. at 29). The Officers' search produced a crack pipe, a partially consumed marijuana cigarette, and a package of cigarette rolling papers (Tr. at 29). Ms. Drake was not arrested, but was left at the motel with her mother who, somehow, had returned just as the Officers were taking the petitioner to jail (Tr. at 29).

After eliciting the above testimony, the prosecutor sought the admission of all of the items which were seized from the petitioner's motel room, and defense counsel did <u>not</u> object to their admission (Tr. at 105). However, defense counsel did move to dismiss the charges against the petitioner at the close of the State's case and at the close of all of the evidence (Tr. at 105). Defense counsel's motions were denied (Tr. at 106).

Not surprisingly, the jury convicted the petitioner of the cocaine charge (Tr. at 120). Defense counsel then moved to set aside that verdict; however, that motion also was denied (Tr. at 121-22). Thereafter, the petitioner was tried and convicted on the Habitual Felon charge. The trial Court then conducted a sentencing proceeding for both matters.

During the sentencing proceeding, the trial Court found that there were no aggravating factors in this case (Tr. at 187). On the other hand, that Court found that there were four mitigating factors, and that such factors justified a sentence within the mitigated range (Tr. at 187). Accordingly, the trial Court sentenced the petitioner to a term of 100 to 129 months imprisonment (Tr. at 187).

The petitioner timely appealed his case to the North Carolina Court of Appeals. On appeal, newly appointed appellate counsel argued, <u>inter alia</u>, that the trial Court had erred by allowing the State to introduce into evidence the cocaine seized

from the petitioner's room; and that the trial Court had erred in denying the petitioner's motions to dismiss the cocaine charge and to set aside the verdict on that charge. North Carolina v. Howie, 153 N.C.App. 801, 802 (2002), cert. denied, 357 N.C. 167 (2003).

In response, the State argued that the petitioner had failed formally to seek the suppression of the drugs prior to trial; and that such failure constituted a waiver of his right to raise that constitutional challenge in his appeal (see "Brief For The State," pp. 4-6, hereafter "Appellee's Brief"). Therefore, the State argued that the petitioner was not even entitled to any review on his Fourth Amendment claims (Appellee's Brief at 4-5). Equally critically, the State also argued that notwithstanding that waiver, the petitioner's Fourth Amendment challenge had to fail because the Officers' "inadvertent[]" discovery of the cocaine came only after they were given consent to enter the room (Appellee's Brief at 6).

On review, the State Court of Appeals agreed that the petitioner had not formally sought to suppress the drugs either prior to or during his trial in accordance with State procedural requirements; therefore, he had waived his right to object to the trial Court's admission of that evidence. Howie, 153 N.C. App. at 803. Accordingly, the appellate Court declined to review the merits of the petitioner's claims, and it affirmed his case upon

a finding of "no error."  Id. at 804.

Next, on or about March 18, 2004, the petitioner returned to the Superior Court of Union County on his Motion for Appropriate Relief.  Of relevance here, the record shows that in his MAR the petitioner argued that his trial attorney had been ineffective by his failure formally to seek the suppression of the evidence against him either before or during his trial; and that his appellate counsel had been ineffective by his failure to raise trial counsel's ineffectiveness on direct appeal.

In response to those claims, the State made two critical assertions.  First, the State conceded that defense counsel could not have made a pre-trial motion to suppress the evidence because the State had not fulfilled its responsibility of making a pre-trial disclosure of its intention to use the subject evidence at trial (see "Response To Defendant's Motion For Appropriate Relief," at p. 10, hereafter "MAR Response").  Second, conceding that no motion to suppress the evidence was made during trial, the State also argued that had such a motion been made and an extensive voir dire been conducted on the question of suppression, the trial Court still would have denied the motion upon a find that "there was no search, and that the statutes dealing with searches do not apply as the evidence was in plain view" (MAR Response at 10).

Then, in an inexplicable change of position, the State in-

triguingly argued that defense counsel <u>had</u>, in fact, sought the suppression of the cocaine (MAR Response at 10). In fact, the State took issue with the appellate Court's findings to the contrary (MAR Response at 11). That is, in contrast to its earlier concession that no motion had been made, the State argued that:

> The Court of Appeals h[eld] that the failure of the Defendant to raise the admissibility question for evidence obtained in an allegedly unlawful search by a motion to suppress constituted a waiver by the defendant of his objection to the admission of the evidence. The State contends that [defense counsel] did raise an objection not only during that part of the trial, but also when Captain Pierce testified that he noticed the knob in the sink had been popped off and there were plastic bags stuffed down the hole. This was more than merely a general objection and consti-tuted a motion to suppress.

<u>Id</u>.

Nevertheless, without so much as a backward glance, let alone an explanation for its departure from its earlier waiver-by-default argument, the State proceeded to argue that the State Court of Appeals had "dealt with . . . the issue of the search"; and that there was no illegal search because the Officers' testi-mony had established that the drugs were found after the Officers lawfully had gained entry into the room and properly had conduct-ed a "brief protective sweep for officer safety" (MAR Response at 12).

Indeed, the State claimed that such protective sweep was justified by the fact that the Officers originally had been

called to the Economy Inn for a "domestic dispute"; that, "[o]nce
inside the motel room it was necessary for officer safety to
ensure that no weapons or other individuals were in the immediate
area, particularly, the toilet and shower area which was enclosed
by a door"; that such sweep was in accordance with the U.S. Su-
preme Court's holdings in <u>Maryland v. Buie</u>, 494 U.S. 325 (1990)
and <u>Terry v. Ohio</u>, 392 U.S. 1 (1968); and that the drugs were
found in plain view during that limited search (MAR Response at
12-13).

Ultimately, the State argued that neither trial nor appel-
late counsel were deficient in connection with their handling of
the Fourth Amendment issue; and that even if they were deficient,
the petitioner had failed to show any resulting prejudice (MAR
Response at 18-21).

Subsequently, the State MAR Court entered a four-page Order
in which it rejected the petitioner's claims.  In particular, the
MAR Court accepted the State's concession that "the State of
North Carolina had not given defense counsel any pre-trial notice
of its intention to introduce the drugs, as was required under
State law; therefore, defense counsel could not have been defi-
cient for his failure to make a pre-trial suppression motion in
this case (MAR Order at 2).

Surprisingly, however, the MAR Court also found credibility
in the State's newly adopted position that defense counsel had:

11

"made arguments in support of the suppression of the entry by police into the motel room and, therefore, any testimony arising therefrom, and any seizure of evidence therefrom. [Defense counsel] also objected to the admission into evidence of the cocaine found. [Therefore, Counsel] was clearly actively functioning as counsel in this case . . . ." (MAR Order at 3). Then, equally surprisingly--and without any supporting legal analysis--the MAR Court also found that the bags containing the drugs "were visible from an area where the Court had found the police properly present"; therefore, the petitioner could not establish any prejudice on his claim of ineffective assistance (MAR Order at 3).

Accordingly, the MAR Court ultimately concluded that trial counsel had not prejudiced the petitioner; and therefore, that appellate counsel could not have been deficient for his failure to challenge trial counsel's performance since the petitioner had failed to show "that there was a reasonable probability of a different outcome in the absence of the alleged errors" (MAR Order at 3-4).

Undeterred, the petitioner filed a Petition for a Writ of Certiorari in the State Court of Appeals. There, the petitioner properly pointed out the inconsistencies with the State's chang- ing positions, noting that contrary to its most recent arguments, the State initially had claimed that trial counsel had waived his

right to bring a Fourth Amendment challenge by virtue of his failure to make a formal motion to suppress the evidence; and that the State appellate Court's decision to reject his claims actually was based upon that specific argument (see "Petition For A Writ Of Certiorari," at p. 3-6, hereafter referred to as "Certiorari Petition").

The petitioner also pointed out that the State's assertion and the MAR Court's finding that the drugs were found in plain view is inconsistent with the Officers' testimony. (Certiorari Petition at 6)  That is, the petitioner noted the Officers' testimony that the drugs were discovered only after Pierce had conducted a search in the back of the room--a place where he had no right to be; and, in any event, that a protective sweep cannot be justified on the basis of the Officer's presence in the room for the sole purpose of discussing a family-related problem which did not even involve him (Certiorari Petition at 6-7).

Essentially oblivious to the petitioner's points concerning the inconsistencies, the State's Response reasserted that trial counsel had, in fact, "properly objected, participated in the voir dire of the officer and made the proper arguments with respect to the suppression of that evidence" (see "State's Response To Petition For Writ Of Certiorari," at p. 6, hereafter "Response to Certiorari Petition").  Presumably in the alternative, the State also argued that the petitioner was not preju-

diced by the lack of a motion to suppress because the evidence was found in plain view in a place where the Court had found the Officers properly were present (Response To Certiorari Petition at 6). Nevertheless, the State Court of Appeals did not address the parties' arguments, but instead simply issued a summary denial of the Certiorari Petition.

Consequently, having exhausted all of his State Court remedies, the petitioner came to this Court on the instant Petition for a Writ of Habeas Corpus. Not surprisingly, in his Petition, the petitioner argues that his drug conviction was obtained by virtue of the admission of evidence which was secured in violation of his constitutional rights. The petitioner argues that he was subjected to ineffective assistance of counsel due to trial counsel's failure to have moved either to discover which evidence the State intended to use at trial, or to suppress the evidence once counsel became aware of the State's intentions. The petitioner further argues that appellate counsel also was ineffective for having failed to challenge trial counsel's conduct. Last, the petitioner argues that the MAR Court had erred in concluding that the plain-view doctrine was applicable to this case.

By contrast, in its Motion for Summary Judgment and Answer To Petition, the State argues that the petitioner "lodged Fourth Amendment search and seizure objections at trial and a voir dire hearing was conducted"; therefore, he already has been afforded a

full and fair opportunity to litigate those matters.  More criti-
cally, the State argues that in light of that fact, the case of
Stone v. Powell, 428 U.S. 465 (1976) bars the petitioner from
rasing such issue in this proceeding.  In addition, the State
alternatively argues that since the petitioner's Fourth Amendment
claim was rejected on direct appeal--as evidenced by the State
appellate Court's finding of a waiver-by-default--such procedural
bar also precludes this Court's review of that matter.

Furthermore, the State argues that the instant Fourth Amend-
ment claim is without merit in any case, as the MAR Court has
found that the cocaine was found in plain view during Officer
Pierce's "search for weapons."  Thus, the State argues that
pursuant to the deferential standard of review to which that
decision is entitled, this Court should affirm the MAR Court's
conclusions that the evidence was properly admitted; and that
neither of the petitioner's attorneys was ineffective in connec-
tion with their defense of the petitioner's Fourth Amendment
rights.

The petitioner has rejoined the State's Motion for Summary
Judgment.  Therefore, this matter is ripe for disposition. As has
already been noted, this Court has carefully reviewed the record,
and has determined that the State Court's conclusion that trial
counsel was not ineffective is both contrary to relevant pre-
cedent and/or based upon an unreasonable determination of the

facts.  Therefore, the petitioner is entitled to a Writ of <u>Habeas</u>
<u>Corpus</u>.

## II.  <u>ANALYSIS</u>

### 1.  <u>Standard of review for habeas petitions</u>.

Generally speaking, the standard of review to be applied by
the Court to <u>habeas</u> cases is "quite deferential to the rulings of
the state court."  <u>Burch v. Corcoran</u>, 273 F.3d 577, 583 (4th Cir.
2001).  Indeed, as the <u>Burch</u> Court noted:

> [p]ursuant to the standards promulgated in 28
> U.S.C. §2254, a federal court may not grant a
> writ of habeas corpus with respect to a claim
> adjudicated on the merits in state court
> proceedings unless the state court's adjudi-
> cation: (1) "resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of
> the United States" . . . ; or (2) "resulted
> in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding. . . ."

<u>Id</u>. (internal citations omitted).

The Supreme Court has explained that a State court adjudi-
cation is "contrary" to clearly established federal law, only if
"the state court arrives at a conclusion opposite to that reached
by [the Supreme] Court on a question of law or if the state court
decides a case differently than [the Supreme] Court has on a set
of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529
U.S. 362, 413 (2000), quoted in <u>Burch</u>.

The applicable standard of review is to be applied to "all

claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." <u>Thomas v. Davis</u>, 192 F.23d 445, 455 (4th Cir. 1999). With these principles firmly in mind, this Court now directs its attention to the petitioner's claims.

**<u>Trial Counsel rendered ineffective assistance</u>**.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen'l. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477 U.S. 478, 494

(1986), citing United States v. Frady, 456 U.S. 152, 170 (1982).
Under these circumstances, then, the petitioner "bears the burden
of proving Strickland prejudice." Fields, 956 F.2d at 1297,
citing Hutchins, 724 F.2d at 1430-31.

Notwithstanding the State's vacillation on the question, the
record makes it clear that the petitioner's trial counsel did not
formally or otherwise move to suppress the drugs which were
seized from the petitioner's motel room.  Had trial counsel done
so, there is a reasonable probability that he would have succeed-
ed in demonstrating that the drugs were unlawfully seized, and
could not be admitted into evidence against the petitioner.

Indeed, the critical question which the instant facts pre-
sent is not whether the Officers lawfully were in the subject
motel room when they discovered the drugs--which question this
Court would answer in the affirmative--but whether Officer Pierce
violated the petitioner's Fourth Amendment rights when he
conducted the "protective sweep" which led to his discovery of
those drugs.  That is, despite the noteworthy absence of any
testimony to establish that Ms. Drake was herself anything more
than a guest in the petitioner's motel room, the record evidence
is clear that she did invite the Officers into that room; and
that the petitioner did not ask the Officers to leave, or
otherwise object to their presence.  Accordingly, at the very
least, the record shows that the petitioner implicitly consented

to the Officers' presence in his motel room.

On the other hand, however, the record equally is clear that the Officers were permitted into the petitioner's room to "talk about the situation between [Ms. Drake] and her mother," which matters did not directly involve the petitioner. Moreover, the evidence shows that the specific issue which brought the Officers to the motel in the first place, i.e., the dispute involving Ms. Drake's mother's car, was entirely resolved by the time that the Officers went to the petitioner's room. Most critically on this point, the record is clear that the drugs were discovered in the back of the motel room only after Officer Pierce conducted his so-called protective sweep.

In Buie v. Maryland, 494 U.S. 325, 327 (1990), the U.S. Supreme Court defined a protective sweep as a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others" (emphasis added). In addition, the Buie Court specifically stated that the Fourth Amendment permits a properly limited protective sweep only "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

In the instant case, the Officers did not enter the petitioner's room for the purpose of effectuating a lawful arrest. Thus, based upon Buie, it is not altogether clear that the

Officers were legally entitled to conduct a protective sweep under any circumstance. However, even assuming _arguendo_ that such a search legally could have been conducted in the absence of an arrest, there still is absolutely no testimony in this record to support a conclusion that Officer Pierce had a reasonable belief, based on specific and articulable facts, that the petitioner's room harbored a potential danger to him or to Officer McCallister.

Indeed, there was no testimony that the petitioner was known to the Officers as a dangerous person, or as an associate of dangerous people. Moreover, there was no testimony that the Officers had heard voices or sounds coming from the room prior to their entry, so as to justify a belief that someone else might have been present. Nor was there any testimony that the petitioner in any way behaved suspiciously when the Officers entered his room. On the contrary, at least one of the Officers testified that the petitioner sat down with Ms. Drake on a bed in the part of the room where the Officers were located once they entered and began talking with Drake.

Furthermore, the State's one attempt to establish the requisite "reasonable belief" hardly is sufficient. That is, the State's assertion that the protective sweep was justified by virtue of the fact that "[t]he original call to the Economy Inn was a domestic dispute" is entirely disingenuous and, in any case,

falls far short of showing that the Officers reasonably believed that there was another person or anything else in the room which posed a danger to them.  In the absence of such evidence, then, this Court must conclude that the MAR Court's determination that counsel was not ineffective for his failure to seek the suppression of the drugs--based upon its approval of the protective sweep--involved an unreasonable application of the principles from Buie.

On the other hand, to the extent that the MAR Court can be construed as not having approved the protective sweep, but rather as having determined that the drugs were admissible because they were discovered in plain view apart from the search, this Court also finds that such a determination would have to have been predicated upon an unreasonable application of U.S. Supreme Court precedent and/or an unreasonable determination of the facts in light of the evidence which was presented at trial.

Of the three prongs to the test for determining whether a warrantless seizure of incriminating evidence can be justified under the plain-view doctrine, the first requires that "the officer is lawfully in a place from which the object may be plainly viewed." United States v. Jackson, 131 F.3d 1105, 1109 (4th Cir. 1997), citing Horton v. California, 496 U.S. 128, 136-37 (1990).  However, the instant record does not contain a single word of testimony establishing that the small bags of

drugs either were observed, or could have been observed from the part of the room where the Officers had been invited.

Rather, the testimony exclusively established that after having been in the room for only a few moments, Officer Pierce began conducting his unlawful protective sweep; and that it was during his search of the back of the petitioner's room that he discovered the drugs. Consequently, the plain-view doctrine cannot justify the warrantless seizure of the drugs, since Officer Pierce simply was not entitled to be in the back of the petitioner's room conducting any search.

Ultimately, therefore, it was the foregoing unreasonable applications and determinations which led to the MAR Court's erroneous conclusion that trial counsel was not ineffective for having failed to seek the suppression of the drugs. To be sure, on this record, the undersigned cannot but conclude that had trial counsel moved to suppress the drugs and competently argued the applicable case law, the outcome of the petitioner's trial would have been different.

Finally, inasmuch as trial counsel's prejudicial deficiency entitles the petitioner' to relief on that claim, the petitioner's other claims need not be addressed.

### III.  <u>CONCLUSION</u>

The petitioner has established that his trial counsel was deficient for failing to seek the suppression of the drugs which

were seized during an illegally conducted protective sweep of his motel room.  Therefore, this Court finds that the petitioner's Petition for a Writ of Habeas Corpus must be <u>granted</u>; and that respondent's Motion for Summary Judgment must be <u>denied</u>.

**IV.  <u>ORDER</u>**

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   The petitioner's Petition for a Writ of <u>Habeas Corpus</u> is **GRANTED;**

2.   The petitioner's conviction is **VACATED,** and this matter is **REMANDED** to the State Court;

3.   The State is directed either to retry the petitioner without use of the unlawfully obtained drugs, or to release him from custody within 180 days of the date of this Order;

4.   The State's Motion for Summary Judgment is **DENIED;**

5.   The petitioner's Motion to Dismiss the State's Motion for Summary Judgment is **DISMISSED** as moot; and

6.   The Clerk is directed to send copies of this Order to the petitioner and to Assistant Attorney General Clarence J. Delforge.

**SO ORDERED.**

Signed: November 9, 2006

Graham C. Mullen
United States District Judge